1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER DOE, personally and as the
parent and authorized representative of
her Minor Child, and MINOR CHILD,

                Plaintiffs,

    v.

UNITED STATES CENTER FOR
SAFESPORT, INC., et al.,

                Defendants.

CASE NO. C23-6067 BHS

ORDER

14

15

16

17

18

19

20

21

22

      This matter is before the Court on Defendants USA Swimming, Inc.'s and United States Center for SafeSport Inc.'s motions to dismiss, Dkts. 26, 35. Because Plaintiff Jennifer Doe[1] fails to state a plausible claim for relief against these defendants, the motions are granted.

---

[1] The plaintiffs in this action are both Jennifer Doe and her Minor Child. For simplicity, the Court generally refers to them in the singular as "Doe" unless the context requires otherwise.

ORDER - 1

1

## I.   BACKGROUND

2

This dispute arises from allegations by several female student athletes that Doe's

3

thirteen-year-old male child verbally and physically sexually harassed at least two of

4

them and sent sexually inappropriate text messages to one of them.[2] *See* Dkt. 36-1 at 3;

5

Dkt. 9 at 59, 68. The amended complaint does not say what, exactly, these female

6

students accused Doe's child of doing. However, an exhibit attached to the complaint—a

7

letter signed by the assistant principal of Doe's child's middle school, Jennifer Zamira—

8

indicates that these students reported that he (1) told one of them, "Hey, b[i]tch, give me

9

some head," when they were "on the pool deck while [the high school's] water polo

10

teams were present"; (2) "repeatedly touched" one of the female student's "shoulders,

11

back, chest (below collar bone, above breast), and face while at lunch in the commons

12

during the 2019-2020 school year"; and (3) "sent sexually inappropriate text messages to

13

[one of the female students] via direct message between spring of 2020 and spring of

14

2021." Dkt. 9 at 59. In these text messages, the letter states, Doe's child "call[ed] female

15

students 'b[i]tches,'" "use[d] . . . homophobic slurs," and referenced "'Asian c[o]ck,'"

16

"'gay porn,'" and "engaging in sexual acts with another student." *Id.* at 59–60.

17

18

---

19

    [2] The amended complaint and the parties' briefing fail to discuss fundamental facts
pertaining to the "who, what, when, and where" of this case, presumably out of concern of
revealing sensitive information about Doe's minor child. This has required the Court to examine

20

documents attached to the complaint or incorporated into it by reference to attempt to make
sense of the most basic facts underlying this lawsuit. Doe put these facts at issue by filing this

21

lawsuit, and her use of pseudonyms adequately protects her and her minor child's identities. The
Court accordingly provides the background that the parties elected to not discuss so that a reader

22

may understand this order and the issues in this case.

1       Although neither the amended complaint nor the parties' briefing clearly says so,

2 the Court presumes from the nature of Doe's claims that Doe's child and the minor

3 female children who made these allegations participated on the same swimming club,

4 King Aquatic. King Aquatic is subject to oversight by a "local swimming committee,"

5 Pacific Northwest Swimming, which, in turn, is an administrative division of USA

6 Swimming, a "national governing body." *See* Dkt. 9 at 8, 23, 67; Dkt. 35 at 6.

7       Under the Ted Stevens Olympic and Amateur Sports Act, a national governing

8 body is "an amateur sports organization . . . that is certified by the [United States

9 Olympic and Paralympic Committee] under section 220521." 36 U.S.C. § 220501(9).

10 That statutory section authorizes the Olympic and Paralympic Committee to certify one

11 national governing body "[w]ith respect to each sport included on the program of the

12 Olympic Games, the Paralympic Games, the Pan-American Games, or the Parapan

13 American Games." 36 U.S.C. § 220521(a).

14       Because Doe's child belonged to the same swimming club as these female

15 athletes, the allegations were investigated by the United States Center for SafeSport—a

16 nonprofit organization that "exercise[s] jurisdiction over . . . each national governing

17 body with regard to safeguarding amateur athletes against abuse, including emotional,

18 physical, and sexual abuse, in sports." 36 U.S.C. § 220541(a)(1)(B).

19       During its investigation, SafeSport issued a "No Contact Directive," which

20 directed that Doe's child be prohibited from communicating in any way with the female

21 athletes during the pendency of the investigation. *See* Dkt. 9 at 68. USA Swimming's

22 senior director of legal and membership affairs, Abigail Howard, sent a copy of the no

1    contact directive via email to the chairs of Pacific Northwest Swimming and the head

2    coach of King Aquatic:

> This letter is to inform you that USA Swimming has been notified by the
> U.S. Center for SafeSport (the "Center") that it has been informed of
> allegations that (1) in or about January 2021, [Doe's child] allegedly
> engaged in behaviors that constitute Sexual Misconduct at King Aquatic
> club with minor athlete 1; (2) in or about March 2021, [Doe's child]
> allegedly engaged in behaviors that constitute Sexual Misconduct at King
> Aquatic club with minor athlete 2; (3) in or about March 2021, [Doe's
> child] allegedly engaged in behaviors that constitute Sexual Misconduct at
> King Aquatic club with minor athlete 3; and (4) in or about October 2021,
> [Jennifer Doe][3] allegedly engaged in behaviors that constitute abuse of
> process with minor athletes 1, 2 and 3 at King Aquatic club and members
> of their immediate family.
>
> **No Contact Directive**
> During the pendency of the Center's investigation, [Doe's child] is
> prohibited from communicating in any way with the minor athletes 1, 2 or
> 3, or their immediate family. Communication includes but is not limited to
> contact by phone, through email or text message, via any social media
> application or electronic medium, in-person interactions (verbal and non-
> verbal), or contact facilitated through a third party. Should [Doe's child]
> and minor athlete 1, 2 or 3, or their immediate family, happen to be in the
> same place at the same time, in addition to refraining from any form of
> contact, [Doe's child] must make reasonable efforts to keep his distance
> and avoid getting too close to them.
> . . . .
> At this time, please keep the allegations confidential and, consistent with
> the Code, do not share this information with anyone unless absolutely
> necessary.

Dkt. 9 at 67–68.

---

[3] SafeSport also "alleged abuse of process against Jennifer [Doe]" for having "an attorney 'contact a claimant related to the Center's [investigation of her child] . . . asking questions about an active and ongoing SafeSport investigation.'" Dkt. 9, ¶ 75. That "Claimant . . . believed the conversation to be harassing and intimidating." *Id.* According to its briefing, SafeSport ultimately "issued [to Jennifer Doe] an informal Letter of Admonishment and closed the matter without any sanctions." Dkt. 35 at 8.

1       In January 2022, Doe's child and SafeSport reached an "Informal Resolution" to

2   these allegations.[4] Dkt. 36-1 at 3. Doe's child agreed that he engaged in "the misconduct

3   alleged" in violation of various policies of the SafeSport Code for the U.S. Olympic and

4   Paralympic Movement[5] and, in exchange, he was "formally warned" and required to

5   complete an online training course. *Id.* at 3–5. By signing the resolution, Doe's child

6   acknowledged that it was "a final and binding disposition" and that, "by agreeing to an

7   Informal Resolution with the Center [for SafeSport], [he] waive[d] any right [he] may

8   have under the Code to request arbitration." *Id.* at 5. Nothing in this "Informal

9   Resolution" prohibited Doe's child from participating on the swimming club. *See*

10  *generally id.*

11      Doe and her minor child, apparently unsatisfied with his decision to admit to any

12  wrongdoing, sued USA Swimming, SafeSport, University Place School District, and

13  Zamira in this Court. Dkt. 9. The claims against USA Swimming and SafeSport all arise

14  from SafeSport's investigation into the allegations against Doe's child:

15      (1) A "Declaratory Judgment" claim asserting that "SafeSport's and USA
        Swimming's operations are unconstitutional as applied" and "unfair,
16      deceptive, a breach of the statute and other duties requiring due
        process."

17  _____

18      [4] The Informal Resolution is incorporated into the complaint by reference. *See* Dkt. 9, ¶¶ 87, 88.

19      [5] USA Swimming moves the Court to take judicial notice of limited portions of the 2020, 2021, 2022, and 2023 versions of the SafeSport Code. Dkt. 27 at 3. That motion is **GRANTED**.
20  None of the parties provide the Court with a complete copy of the SafeSport Code effective from April 1, 2021, through March 31, 2022—the version of the code that was in effect when Doe's child signed the Informal Resolution. The Court also takes judicial notice of that version of the
21  code, which is available at the following hyperlink: https://uscenterforsafesport.org/wp-content/uploads/2021/04/SafeSportCode2021_040121_V3.pdf. The Court refers to this edition of
22  the code as "SafeSport Code (2021)."

(2) A claim entitled "Breach of Washington Constitution, Breach of Privacy" asserting that "SafeSport and USA Swimming intruded upon Plaintiffs' solitude, seclusion, or their private affairs, publicly disclosed private facts, or intentionally and publicly put Plaintiffs in a false light" by publishing information related to the sexual harassment allegations.

(3) A claim alleging that, during the investigation into the sexual harassment allegations, USA Swimming and SafeSport violated Washington's Consumer Protection Act (CPA) by, among other things, "[m]isrepresenting the existence" and "use" "of due process in their business operations" and "[f]ailing to follow due process in their business operations."

(4) A claim for intentional infliction of emotion distress, or outrage, essentially asserting that USA Swimming and SafeSport "falsely accused" Doe's child of engaging in sexual misconduct and "[b]rand[ed] the Minor Child with the stigma of sexual misconduct."

Dkt. 9, ¶¶ 142–149, 188–208.[6]

Doe's "Breach of Privacy," CPA, and outrage claims each seek $1 million in damages. Dkt. 9, ¶¶ 194, 200, 207.

Even though her child admitted to "the misconduct alleged" in a "final and binding" resolution with SafeSport, Dkt. 36-1 at 5, Doe now asserts that the allegations were "false." Dkt. 9 at 4. Doe also asserts that "the SafeSport investigation targeting [Doe's] Minor Child was likely . . . driven by" Patrick Keough, a registered coach with

---

[6] The claims that Doe advances against the School District and Zamira are: (1) a claim confusingly entitled "Breach of the U.S. Constitution, Statutes, Washington Constitution, Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., R.C.W. § 28A.600.015, W.A.C. § 392-400-010, and R.C.W. § 28A.600.477"; (2) a claim entitled "Breach of Washington Constitution, Breach of Privacy"; (3) an outrage claim; and (4) a negligence claim. Dkt. 9, ¶¶ 156–187. Doe also advances a claim against the School District entitled "Declaratory Judgment," which, like the claims against USA Swimming and SafeSport, asserts that its "operations are unconstitutional as applied" and "a breach of the statute and other duties requiring procedural due process." *Id.* ¶¶ 150–55.

USA Swimming, and his family (the Keoughs) and Mellissa Bellin, a "USA Swim

official," and her family (the Bellins). Dkt. 9, ¶ 24, 72. For example, the complaint asserts

that "[c]ommunications began circulating by" the Keoughs and Bellins "that 'we have to

do whatever we can to get him in trouble' referring to the plaintiff Minor Child." *Id.* ¶ 34.

The complaint also alleges that the Keoughs and Bellins "escalated the false campaign

reporting the plaintiff Minor Child to Jennifer Zamira and SafeSport calling the Minor

Child a 'sexual predator', that the child was guilty of sexual assault, and sexual

harassment." *Id.* ¶ 35.

USA Swimming and SafeSport move to dismiss the claims against them. Dkts. 26,

35. USA Swimming asserts that the only act that it engaged in was forwarding

SafeSport's no contact directive to the local swimming committee and head coach of the

local swimming club and that it was required to do so under the Amateur Sports Act. Dkt.

26 at 6–7, 9, 12. USA Swimming also contends that it is required under both the Amateur

Sports Act and the SafeSport Code to *not* interfere in any investigation conducted by

SafeSport and, therefore, any claim arising from SafeSport's investigation is not properly

advanced against USA Swimming. *Id.* at 8–9, 11–12.

SafeSport contends that Doe's claims fail because they essentially challenge its

processes for conducting investigations and resolving abuse allegations and that, under

the SafeSport Code, arbitration is the exclusive means by which a participant may

challenge such processes. Dkt. 35 at 15–16. SafeSport further asserts that Doe's child

waived his right to arbitrate his claims when he signed the "final and binding" informal

1  resolution to the investigation through which he admitted to harassing the female athletes

2  and, in return, received a warning. *Id.* at 16.

3      USA Swimming and SafeSport also contend that Doe's claims fail on the merits.

4  USA Swimming argues that Doe's "Declaratory Judgment" claim fails because it seeks a

5  declaration that USA Swimming and SafeSport violated the Amateur Sports Act, yet that

6  Act expressly does not authorize private rights of action. Dkt. 26 at 13. SafeSport

7  contends that the Act expressly authorizes it to investigate and resolve allegations of

8  sexual abuse and other misconduct, which is precisely what it did. Dkt. 35 at 16.

9      SafeSport argues that Doe's CPA claim fails because "Plaintiffs have not alleged

10  they are consumers of or paid for any products or services from the Center," "do not have

11  a contract with the Center," and "fail to allege that the Center committed any act *related*

12  *to trade or commerce*." Dkt. 35 at 18. SafeSport contends that it "does not engage in

13  commerce by selling products or services—it is a nonprofit with the critical mission of

14  eradicating abuse in Olympic and Paralympic Sport." *Id.* at 18–19. USA Swimming

15  additionally argues that this claim fails because the CPA excludes from its ambit "actions

16  or transactions permitted by any other regulatory body or officer acting under statutory

17  authority of this state or the United States." Dkt. 26 at 15 (emphasis removed).

18      USA Swimming and SafeSport assert that Doe's invasion of privacy claim fails

19  because it is based solely on SafeSport's issuing the no contact directive and USA

20  Swimming forwarding the directive to the local swimming committee and head coach of

21  the local swimming club. They contend that both of these acts were authorized by the

22  Amateur Sports Act and SafeSport Code. Dkt. 26 at 16; Dkt. 35 at 22. SafeSport also

1    asserts that neither USA Swimming nor it "publicly disseminate[d]" this directive and

2    that USA Swimming's email "expressly instructed the recipients to keep the

3    communication confidential." Dkt. 35 at 21.

      SafeSport and USA Swimming finally contend that Doe's outrage claim fails

5    because it wrongly alleges that these entities "accused" Doe's child of sexual harassment

6    and is otherwise based on conclusory allegations. Dkt. 26 at 18; Dkt. 35 at 25.

      Doe opposes all these arguments. Dkts. 38, 42. She argues that the Amateur Sports

8    Act "specifically preserve[s] rights to due process, private causes of action, and

9    independent duties of the Center [for SafeSport] (and every [national governing body]) to

10   their members." Dkt. 42 at 13.

      Doe contends that her claim for declaratory relief is plausible because she "alleges

12   conduct by Swimming (and all the Defendants) affecting constitutional interests,

13   proscribed by statute, entitling the challenges against the protection of Plaintiffs'

14   constitutional rights to proceed." Dkt. 38 at 25.

      Doe argues that her CPA claim is plausible because SafeSport and its national

16   governing bodies "are monopolies with exclusive control over amateur athletes." Dkt. 38

17   at 25; Dkt. 42 at 27. She asserts, without citation relevant legal authority applied to

18   specific factual allegations, that "[w]hen a consumer does not have a reasonable

19   alternative, such oppression in the marketplace establishes the essential elements of the

20   cause of action as a matter of law." Dkt. 38 at 27; Dkt. 42 at 27.

      Doe asserts that she states a plausible invasion of privacy claim because USA

22   Swimming and SafeSport "[g]ratuitously add[ed] the 'sexual misconduct' label"

1   (presumably to the no contact directive), which amounts to "a clear breach of duty

2   relating to a report, memorandum, work product, notes, or case file of the Center." Dkt.

3   38 at 28; Dkt. 42 at 29.

4        Doe finally contends that she states a plausible outrage claim because USA

5   Swimming and SafeSport "gratuitously and unnecessarily branded the Minor Child with

6   the false stigma of sexual misconduct, without any hearing, and without any finding of

7   sexual misconduct ever being made." Dkt. 42 at 30. She also contends that USA

8   Swimming and SafeSport "share responsibility for the years of unrelenting, despicable

9   acts of their respective agents, the Keoughs and the Bellins." Dkt. 42 at 30. She does not

10  identify what "acts," exactly, to which this statement refers. *See id.*

11       The issues are addressed in turn.

12                        **II.   DISCUSSION**

13  **A.      Rule 12(b)(6) Standard of Review**

14       Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either

15  the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

16  cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

17  1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible

18  on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility"

19  when the party seeking relief "pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although

21  courts must accept as true the complaint's well-pleaded facts, conclusory allegations of

22  law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion

1   to dismiss. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007);

2   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's

3   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

4   labels and conclusions, and a formulaic recitation of the elements of a cause of action will

5   not do. Factual allegations must be enough to raise a right to relief above the speculative

6   level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This

7   requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-

8   me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

9         When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant

10   leave to amend even if no request to amend the pleading was made, unless it determines

11   that the pleading could not possibly be cured by the allegation of other facts." *Cook,*

12   *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However,

13   when the facts are not in dispute and the sole issue is whether there is liability as a matter

14   of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193,

15   195–96 (9th Cir. 1988).

16   **B.     All of Doe's claims against USA Swimming and SafeSport challenge the**
     **processes of SafeSport's investigation into the sexual harassment allegations against**
17   **her child.**

18         Although the factual and legal bases for Doe's claims against USA Swimming and

19   SafeSport are far from clear from the face of the amended complaint, they all, at their

20   core, concern the manner in which these entities handled the investigation into the

21   allegations of sexual harassment against her child.

22

1    The amended complaint's first cause of action against USA Swimming and

2    SafeSport, which is entitled "Declaratory Judgment," Dkt. 9 at 37, asserts—in a

3    conclusory manner and without citation to a specific constitutional provision—that

4    "SafeSport's and USA Swimming's operations are unconstitutional as applied." *Id.* ¶

5    146. It also asserts, without reference to specific factual allegations, that "Defendants'

6    operations subject Plaintiffs . . . to illegitimate proceedings, by illegitimate and unknown

7    decision makers, and decision makers that are unaccountable. As currently structured,

8    SafeSport and USA Swimming's operations are 'impossible to remedy once the

9    proceeding is over.'" *Id.* ¶ 148 (quoting *Axon Enter., Inc. v. Federal Trade Comm'n*, 598

10   U.S. 175, 191 (2023)).[7] Finally, and again without reference to specific factual

11   allegations, the amended complaint asserts that "SafeSport and USA Swimming's

12   operations are unfair, deceptive, a breach of statute and other duties requiring due

13   process." *Id.* ¶ 149. The exact "statute" and "other duties requiring due process" to which

14   Doe refers is not clear from the complaint's face. *See id.*

15

16

---

17   [7] Doe's reliance on *Axon* is misplaced. That case concerns two respondents' challenges in
     administrative enforcement actions by two federal agencies, the Federal Trade Commission and

18   the Securities and Exchange Commission, to "the constitutional authority of the agency
     [proceedings] to proceed" *before those proceedings had ended*. *Axon*, 598 U.S. at 180. The

19   Supreme Court's "task [was] not to resolve those challenges; rather, it [was] to decide where
     they may be heard." The Court held that "district courts have jurisdiction to hear those suits—

20   and . . . to resolve the parties' constitutional challenges to the Commissions' structure." *Id.* The
     Court explained that the respondents "will lose their rights not to undergo the complained-of

21   agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192.
     As USA Swimming persuasively asserts, "the Center's investigation into Minor Child has

22   already been completed with Minor Child stipulating to a warning, so *Axon* is inapplicable." Dkt.
     26 at 21.

1   The next cause of action against USA Swimming and SafeSport asserts that these

2   entities' handling of the investigation violated the CPA because they "engag[ed] in unfair

3   or deceptive acts or practices" that, somehow, "occurred in trade or commerce." Dkt. 9, ¶

4   189. This claim asserts—in a conclusory manner, without citation to specific factual

5   allegations, and without any explanation as to how USA Swimming or SafeSport violated

6   the CPA—that these entities:

7       (a) Misrepresent[ed] the existence of due process in their business
           operations;

8       (b) Misrepresent[ed] use of due process in their business operations;
        (c) Fail[ed] to follow due process in their operations;

9       (d) Fail[ed] to ensure that any action by SafeSport against an individual
           under its jurisdiction, including an investigation, the imposition of

10         sanctions, and any other disciplinary action, is carried out in a manner
           that provides procedural due process as required by 36 U.S.C. §

11         220541(a)(1)(H);
        (e) Mix[ed] investigation, prosecution, and adjudication process in their

12         business operations;
        (f) Misrepresent[ed] the provision of written notice of charges against

13         individuals;
        (g) Misrepresent[ed] the right to be represented by counsel;

14      (h) Interfere[ed] with the right to be represented by counsel;
        (i) Misrepresent[ed] the right to be heard prior to imposition of sanctions;

15      (j) Misrepresent[ed] the burden of proof;
        (k) Shift[ed] the burden of proof;

16      (l) Ignor[ed] the burden of proof;
        (m)   Misrepresent[ed] the ability to challenge sanctions imposed;

17      (n) Fail[ed] to protect information in a confidential manner;
        (o) Leak[ed] and publish[ed] confidential information;

18      (p) Arbitrarily target[ed] individuals;
        (q) Fail[ed] to safeguard all amateur athletes against abuse, including

19         emotion, physical, and sexual abuse, in a fair, equal way as required by
           36 U.S.C. § 220541(a)(1)(B); and

20      (r) Otherwise operat[ed] in an unfair or deceptive manner.

21  Dkt. 9, ¶ 193(a)–(r).

22

1        The next cause of action against USA Swimming and SafeSport is entitled

2  "Breach of Washington Constitution, Breach of Privacy." Dkt. 9 at 50. This cause of

3  action does not cite any particular provision of the Washington Constitution, and

4  asserts—again in a conclusory manner and without citation to specific factual

5  allegations—that "SafeSport and USA Swimming intruded upon Plaintiffs' solitude,

6  seclusion, or their private affairs, publicly disclosed private facts, or intentionally and

7  publicly put Plaintiffs in a false light" in numerous ways, including by:

> (a) Publishing or communicating false allegations of sexual harassment;
> (b) Publishing or communication false allegations of a sexual nature;
> (c) Publishing or communicating false allegations of sexual misconduct;
> (d) Branding the Minor Child with the stigma of sexual misconduct;
> (e) Failing to protect the Plaintiffs from sexually explicit/inappropriate communications through social media;
> (f) Failing to protect information related to the Minor Child in a confidential and professional manner;
> (g) Leaking and publishing confidential, private, information about the Minor Child;
> (h) Otherwise leaking, publishing, attacking, terrorizing, harassing, intimidating, bullying, and discriminating against the Minor Child and the Doe Family, intruding upon their private affairs.

Dkt. 9, ¶ 196(a)–(h).

        The final cause of action against USA Swimming and SafeSport is for outrage and

alleges, in a conclusory manner, that these entities had both "a duty to protect the Doe

Family and Minor Child from emotional misconduct, physical misconduct, bullying

behaviors, hazing, harassment, discrimination, sexual harassment, and stalking" and "a

duty to protect information related to the Minor Child in a confidential and professional

manner." Dkt. 9, ¶¶ 202, 203. Without citation to specific factual allegations, the

amended complaint asserts in a vague and conclusory manner that USA Swimming and

SafeSport "breached their duties" by:

> (a) Falsely accusing the Minor Child or sexual harassment;
> (b) Falsely accusing the Minor Child of conduct of a sexual nature;
> (c) Falsely accusing the Minor Child of sexual misconduct;
> (d) Branding the Minor Child with the stigma of sexual misconduct;
> (e) Failing to protect the Plaintiffs from emotional misconduct, physical misconduct, bullying behaviors, hazing, harassment, discrimination, sexual harassment, and stalking;
> (f) Harassing, intimidating, bullying, and discriminating against the Plaintiffs;
> (g) Failing to protect information related to the Minor Child in a confidential and professional manner;
> (h) Leaking and publishing confidential information about the Minor Child;
> (i) Otherwise attacking, terrorizing, harassing, intimidating, bullying, and discriminating against the Minor Child and the Doe Family.

Dkt. 9, ¶ 204(a)–(i).

The amended complaint asserts that "Defendants' conduct is and was extreme,

outrageous, beyond acceptable bounds of decency, and intolerable in a civilized

community." Dkt. 9, ¶ 205.

Despite their vagueness, all these claims are based on Doe's dissatisfaction with

the manner in which SafeSport investigated the allegations of sexual harassment against

her child and the result of that investigation. For numerous reasons, these claims are

patently meritless.

## 1.  USA Swimming's and SafeSport's "operations" are not "illegitimate."

To the extent Doe asserts that USA Swimming's and SafeSport's "operations" are

"illegitimate," she is wrong. Dkt. 9, ¶ 148. Congress, through the Amateur Sports Act,

declared that "[t]he United States Center for SafeSport shall . . . develop training,

oversight practices, policies, and procedures to prevent the abuse, including emotional,

physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies." 36 U.S.C. § 220541(a)(1)(C). The Amateur Sports Act also recognizes national governing bodies like USA Swimming, which are "amateur sports organization[s], . . . high-performance management organization[s], or . . . paralympic sport[s] organization[s] that [are] certified by the [United States Olympic and Paralympic Committee]." 36 U.S.C. § 220541(b)(9). Under the Act, "national governing bod[ies] shall," among other things, "promote a safe environment in sports that is free from abuse of any amateur athlete, including emotional, physical, and sexual abuse" and "take care to promote a safe environment in sports using information relating to any temporary measure or sanction issued pursuant to the authority of the Center [for SafeSport]." 36 U.S.C. § 220524(a)(13)–(14). Far from being illegitimate, USA Swimming's and SafeSport's operations are authorized by an Act of Congress.

      **2.**      **The SafeSport Code precludes Doe from advancing her claims in court.**

      Under the SafeSport Code—which SafeSport adopted pursuant to the Amateur Sports Act—Doe is not entitled to advance any of her claims against USA Swimming and SafeSport in court because, at their core, they challenge the processes underlying SafeSport's investigation. The section of the Amateur Sports Act enumerating the general duties of SafeSport expressly provides that "[n]othing in this subsection shall be construed . . . to give rise to a claim under State law or to create a private right of action." 36 U.S.C. § 220541(a)(2)(C). The Act also, as explained, requires SafeSport to "develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur

athletic activities through national governing bodies." 36 U.S.C. § 220541(a)(1)(C). The

Act provides that "[t]he policies and procedures developed under subsection (a)(1)(C)

shall apply as though they were incorporated in and made a part of section 220524 of this

title," which provides for the general duties of national governing bodies like USA

Swimming. 36 U.S.C. § 220541(b). The Act further provides that SafeSport "may, in its

discretion, utilize a neutral arbitration body and develop policies and procedures to

resolve allegations of sexual abuse within its jurisdiction to determine the opportunity of

any amateur athlete, . . . who is the subject of such an allegation, to participate in amateur

athletic competition." 36 U.S.C. § 220541(c)(1).

Pursuant to these statutory directives, SafeSport requires, as part of its Code, that

any challenge to its sanctions be brought through arbitration: "Arbitration shall resolve

whether a Respondent violated the Code and the appropriate sanction." SafeSport Code

(2021) at 30. The SafeSport Code similarly provides that arbitration is "the sole and

exclusive method" by which participants may challenge SafeSport's "processes":

> Each Participant, by virtue of membership, affiliation, or participation or
> other activity making them subject to the jurisdiction of the Center [for
> SafeSport], agrees to abide by and be subject to these Arbitration Rules as
> *the sole and exclusive method of resolving any challenge to the Center's*
> *eligibility decision(s) or the Center's processes*.

SafeSport Code (2021) at 30 (emphasis added).

Doe and her minor child did not arbitrate their claims, all of which essentially

challenge SafeSport's processes. In fact, by signing the "Informal Resolution" in which

Doe's child agreed that he engaged in the conduct underlying the allegations, he

expressly waived his right to challenge such processes, even through arbitration:

1

2

3

> I voluntarily acknowledge that I engaged in the misconduct alleged and
> understand that this Informal Resolution is a final and binding disposition[.]
> I further understand that by agreeing to an Informal Resolution with the
> Center [for SafeSport], I waive any right I may have under the Code to
> request arbitration. [sic] matters as set forth above, including the allegations
> and imposed sanctions.

4

Dkt. 36-1 at 5.

5

6

Therefore, Doe and her child are not entitled to challenge in court the processes by

7

which USA Swimming or SafeSport handled the investigation into the sexual harassment

8

allegations. For this reason alone, Doe's claims against USA Swimming and SafeSport

9

fail.[8] But even if Doe and her child were entitled to advance their claims in this court,

10

they would fail for numerous reasons.

11

**3.    Doe's "Declaratory Judgment" claim fails because the amended
complaint fails to articulate a basis for this claim and, even if it is based on the
Amateur Sports Act, that Act does not authorize private rights of action.**

12

13

Doe's "Declaratory Judgment" claim against USA Swimming and SafeSport does

14

not contain "a short and plain statement of the claim showing that the pleader is entitled

15

to relief." Fed. R. Civ. P. 8(a)(2). Doe's vague and conclusory assertions that USA

16

Swimming's and SafeSport's "operations" are "unconstitutional," "illegitimate,"

17

"unfair," "deceptive," and "a breach of statute and other duties requiring due process" are

18

---

19

[8] Doe wrongly asserts that the following subsection of the Amateur Sports Act authorizes
her to challenge the processes related to SafeSport's investigation: "Nothing in this section shall

20

be construed as altering, superseding, or otherwise affecting the right of an individual within the
Center's jurisdiction to pursue civil remedies through the courts *for personal injuries arising
from abuse in violation of the Center's policies and procedures*." 36 U.S.C. § 220541(c)(2)

21

(emphasis added). As SafeSport correctly responds, "this statutory provision simply makes clear
*victims of abuse* do not waive their right to bring legal action against their abusers by

22

participating in the Center's processes." Dkt. 47 at 4–5. This subsection does not apply here.

1    insufficient to state a plausible claim. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's

2    obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

3    labels and conclusions."); *Vasquez*, 487 F.3d at 1249 ("[C]onclusory allegations of law

4    and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to

5    dismiss."). Doe's briefing does not fare any better, and is replete with conclusory and

6    vague assertions—without citation to relevant legal authority applied to specific factual

7    allegations—that USA Swimming and SafeSport somehow violated "due process" and

8    engaged in "unconstitutional" conduct.[9] Such assertions are also insufficient to survive a

9    Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555; *Vasquez*, 487 F.3d at

10   1249.

11        Even construed liberally—a grace typically afforded to only pro se litigants, not

12   those who are, as here, represented by counsel—the amended complaint does not state a

13   plausible claim for declaratory relief. At best, the amended complaint appears to base this

14

15        [9] *See, e.g.*, Dkt. 38 at 18, 19, 25 ("Swimming failed to observe independent obligations to
     its members to ensure that the Center's inquiry was conducted according to the due process
16   protections imposed by the Center's organic statute.") ("Defendant Swimming breached its
     independent obligations to plaintiffs by failing to ensure that due process protections imposed
17   upon Swimming . . . were observed BEFORE Swimming announced a public and punitive
     sanction.") ("Swimming went far beyond what may be necessary or appropriate breaching any
18   notion of due process or confidentiality.") ("Swimming . . . publishing allegations of 'sexual
     misconduct' about plaintiff's minor child, allegedly against three other, different minor children .
19   . . was . . . a breach of the minor's privacy, confidentiality, and constitutes a gross breach of due
     process."); ("In 'incredible detail' the [amended complaint] alleges conduct by Swimming (and
20   all the Defendants) affecting constitutional interests, proscribed by statute, entitling the
     challenges against the protection of Plaintiff's constitutional rights to proceed.") (interpreting the
21   Amateur Sports Act to not authorize private rights of action "renders the SafeSport Code and the
     interplay with the Ted Stevens Act an unconstitutional intrusion on due process, overlooks the
22   preservation of common law rights of action, and violates the separation of powers"). None of
     these vague, conclusory assertions—devoid of citation to relevant legal authority applied to
     specific factual allegations—establish a plausible claim.

1   claim on the Amateur Sports Act. In particular, a few sentences in the over 200-

2   paragraph-long complaint reference subsection 220541(a)(1)(H) of this Act,[10] which

3   requires SafeSport to comply with certain statutorily-enumerated procedures when taking

4   action against any individual under its jurisdiction:

> (a) Duties of Center.—
>     (1) In General.—The United States Center for SafeSport shall–
> . . .
>     (H) ensure that any action taken by the Center against an individual
>     under the jurisdiction of the Center, including an investigation, the
>     imposition of sanctions, and any other disciplinary action, is carried out
>     in a manner that provides procedural due process to the individual,
>     including, at a minimum—
>         (i) the provision of written notice of the allegations against the
>         individual;
>         (ii) a right to be represented by counsel or other advisor;
>         (iii) an opportunity to be heard during the investigation;
>         (iv) in a case in which a violation is found, a reasoned written
>         decision by the Center; and
>         (v) the ability to challenge, in a hearing or through arbitration,
>         interim measures or sanctions imposed by the Center.

36 U.S.C. § 220541(a)(1)(H).

But again, this subsection expressly provides that "[n]othing in this subsection

shall be construed . . . to give rise to a claim under State law or to create a private right of

action." 36 U.S.C. § 220541(a)(2)(C). In fact, the Amateur Sports Act as a whole

expressly does not authorize private rights of action. *See* 36 U.S.C. § 220505(b)(9)

---

[10] *See, e.g.*, Dkt. 9, ¶ 18 ("Possible protection against SafeSport and [national governing bodies] is found under a portion of the federal statute. Any action against an individual within its jurisdiction is required to be 'carried out in a manner that provides procedural due process to the individual.' 36 U.S.C. § 220541[(a)(1)(H)]."); *id.* ¶ 55 ("Action by SafeSport against an individual within its jurisdiction is required to follow due process. 36 U.S.C. § 220541 (a)(1)(H)."); *id.* at 53 (seeking a judgment "[d]eclaring Defendants SafeSport and USA Swimming in breach of the statute, 36 U.S.C. § 220541").

1    ("[N]either this paragraph *nor any other provision of this chapter shall create a private*

2    *right of action under this chapter*." (Emphasis added)); *accord Lee v. U.S. Taekwondo*

3    *Union*, 331 F. Supp. 2d 1252, 1256–57 (D. Haw. 2004).

4           It is well established that "the Declaratory Judgment Act[11] does not provide an

5    affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52

6    F.4th 874, 878 (9th Cir. 2022) (collecting cases). This is because "[t]he availability of

7    relief under the Declaratory Judgment Act 'presupposes the existence of a judicially

8    remediable right.'" *Id.* (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Because

9    the Amateur Sports Act does not authorize private rights of action, Doe's "Declaratory

10   Judgment" claim fails.[12]

11          For these reasons, USA Swimming's and SafeSport's motions to dismiss Doe's

12   "Declaratory Judgment" claim against them are accordingly **GRANTED**. Because this

13   claim cannot be cured through further amendment, it is **DISMISSED with prejudice.**

14          **4.     Doe's CPA claim is facially meritless.**

15          Doe's CPA claim is patently implausible. As SafeSport contends, this claim

16   "simply repackage[s] [Doe's] procedural due process allegations (e.g., no hearing, no

17   cross examination) as a deceptive trade practice, but this is insufficient." Dkt. 35 at 18.

18          A CPA claim requires a plaintiff to show: "(1) [an] unfair or deceptive act or

19   practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the

---

[11] 28 U.S.C. § 2201.

[12] Section 22051(1)(1)(H) also plainly applies to only SafeSport, not USA Swimming, and Doe fails to explain how SafeSport did not comply with the procedural requirements imposed by this subsection.

plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Doe's briefing does not clearly identify what "act," exactly, underlies her CPA claim, let alone an act that occurred "in trade or commerce" and that caused injury to her "business or property." *See* Dkt. 38 at 25–27; Dkt. 42 at 26–28.

USA Swimming and SafeSport's motions to dismiss this claim are accordingly **GRANTED**. Because this claim cannot be cured through further amendment, it is **DISMISSED with prejudice**.

**5.      Doe's claim entitled "Breach of Washington Constitution, Breach of Privacy" fails because the Washington Constitution does not provide for a private cause of action for invasion of privacy.**

Doe's claim entitled "Breach of Washington Constitution, Breach of Privacy" also fails. The paragraphs under this cause of action do not provide any citation to the particular provision of the Washington Constitution on which Doe bases this claim. *See* Dkt. 9, ¶¶ 195–200. Nevertheless, USA Swimming and SafeSport, in their motions to dismiss, direct the Court to the constitutional provision on which Doe apparently relies. Dkt. 26 at 16; Dkt. 35 at 20 (citing WASH. CONST. art. I, § 7). That section provides that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

In support this claim, Doe cites *Reid v. Pierce County*, 136 Wn.2d 195 (1998). Dkt. 38 at 27; Dkt. 42 at 29. But in that case, the Washington Supreme Court expressly *declined* to recognize a private right of action for damages under article I, section 7 of the Washington Constitution, explaining that the plaintiffs therein "have not presented a

1  reasoned or principled basis upon which to construct a constitutional cause of action, nor

2  have they established why a constitutional cause of action is more appropriate than the

3  common law cause of action which already exists." *Reid*, 136 Wn.2d at 213–14. The

4  court accordingly "reserve[d] the question of whether a plaintiff may maintain a civil

5  cause of action for violation of our state constitution for another day. *Id.* at 214.

6       The amended complaint does not clearly assert a common law claim for invasion

7  of privacy, and Doe does not attempt to present a reasoned or principled basis upon

8  which to construct a private right of action for damages under article I, section 7 of the

9  Washington Constitution. For this reason alone, her claim for "Breach of Washington

10  Constitution, Breach of Privacy" fails. *See Reid*, 136 Wn.2d at 213–14.

11       Even construing the complaint liberally, Doe fails to state a plausible common law

12  claim for invasion of privacy.[13] Invasion of privacy by public disclosure of private facts

13  requires the plaintiff to show that the defendant "'g[ave] publicity to a matter concerning

14  the private life of another'" and "'the matter is of a kind that (a) would be highly

15  offensive to a reasonable person and (b) is not of legitimate concern to the public.'"

16  *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 135–36 (1978) (quoting Restatement (Second)

17  of Torts § 652D (Am. L. Inst. 1977)).

18

19

---

20      [13] Doe also argues that "36 U.S.C. 220541 (f)(4)(C) imposes a strict duty upon Swimming to keep 'Any decision, report, memorandum, work product, notes, or case file of the Center… **confidential**' (emphasis added)." Dkt. 38 at 28; Dkt. 42 at 29. This argument is plainly

21  meritless. The amended complaint does not assert an invasion of privacy claim arising under the Amateur Sports Act, and, even if it did, that Act does not authorize private rights of action. *See*

22  36 U.S.C. § 220505.

1    Similarly, invasion of privacy by false light requires a showing that the defendant

2    "publicized a statement placing [the plaintiff] in false light, so long as '(a) the false light

3    would be highly offensive to a reasonable person and (b) the actor knew of or recklessly

4    disregarded the falsity of the publication and the false light in which the other would be

5    placed.'" *Jha v. Khan*, 24 Wn. App. 2d 377, 391 (2022), *review denied*, 1 Wn.3d 1014

6    (2023) (quoting *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 470–71 (1986)).

7    "Although the plaintiff need not be defamed, there must nevertheless be some showing of

8    falsity." *Jha*, 24 Wn. App. 2d at 391.

9    Doe's briefing on this issue fails to clearly identify the exact conduct from either

10   USA Swimming or SafeSport that she believes amounts to an invasion of privacy. *See*

11   Dkt. 38 at 27–28; Dkt. 42 at 28–29. She instead vaguely argues that "Swimming went far

12   beyond reasonable behavior by publishing false and misleading allegations of 'sexual

13   misconduct' about the plaintiff's minor child that were both inaccurate and unnecessary.

14   Swimming is also responsible for the years of unrelenting, despicable acts by its agents,

15   the Keoughs and the Bellins." Dkt. 38 at 27. Her briefing does not identify the particular

16   acts of the Keoughs or Bellins to which this argument refers.[14]

17   Doe also ambiguously contends that "[g]ratuitously adding the 'sexual

18   misconduct' labels is a clear breach of duty relating to a report, memorandum, work

19   product, notes, or case file of the Center [for SafeSport]." Dkt. 42 at 29. Doe does not

20

21   [14] Because Doe's briefing on this issue fails to identify what the Keoughs or Bellins did, to whom, where, under what circumstances, and which member of these families engaged in the particular acts, she also fails to explain how either USA Swimming or SafeSport is legally responsible, through an agency relationship, for any such act.

22

1    explain what report, memorandum, work product, notes, or case file this assertion

2    concerns or how or to whom such documents were "published."

3    　　　USA Swimming and SafeSport construe this claim as being based on the email

4    sent by USA Swimming to the chairs of the local swimming committee and the head

5    coach of the local swimming club. Dkt. 26 at 12, 16; Dkt. 35 at 21. That email, which is

6    attached to the amended complaint, explains that SafeSport issued a directive prohibiting

7    Doe's minor child from communicating with three other minor children and their

8    "immediate family" while SafeSport investigates allegations of "Sexual Misconduct."

9    Dkt. 9 at 67–68. The email does not provide any specific details of these allegations, and

10   directs the swimming committee and coach to keep the allegations confidential. *Id.* at 68.

11   　　　USA Swimming was statutorily required to enforce SafeSport's no contact

12   directive. *See* 36 U.S.C. § 220505(d)(1)(C) (requiring the U.S. Olympic and Paralympic

13   Committee to "ensure that each national governing body . . . enforces temporary

14   measures and sanctions issued pursuant to the authority of the Center [for SafeSport]").

15   For this reason alone, Doe's claim fails.

16   　　　In any event, the information conveyed in this email was not published to "the

17   public,"[15] it is not highly offensive to a reasonable person, and the allegations were of

18   legitimate concern to both the swimming committee and coach. The email also did not

19   contain false information, Doe does not dispute that her child faced *allegations* of sexual

20   misconduct. And regardless, Doe's child admitted to "the misconduct alleged" when he

21   _____

22   　　　[15] The email was sent to only the local swimming committee and the coach of the
     swimming club. Dkt. 9 at 68.

1  signed the "final and binding" resolution to the investigation. Dkt. 36-1 at 5. For these

2  reasons, even if Doe properly asserted common law claims for invasion of privacy by

3  publication or by false light, those claims would fail.

4      USA Swimming's and SafeSport's motions to dismiss Doe's "Breach of

5  Washington Constitution, Breach of Privacy" claim is **GRANTED**. Because this claim

6  cannot be cured through further amendment, it is **DISMISSED with prejudice**.

7      **6.     Doe fails to state a plausible outrage claim.**

8      Doe's outrage claim is similarly meritless. The amended complaint alleges,

9  without citation to specific factual allegations, that USA Swimming and SafeSport,

10  among other things, "[f]alsely accus[ed] the Minor Child of sexual harassment" and

11  "[b]rand[ed] the Minor Child with the stigma of sexual misconduct." Dkt. 9, ¶ 204(a),

12  (d).

13      USA Swimming contends that this claim is based on conclusory allegations, that it

14  never accused Doe's child of anything, and that it "simply reported the allegations the

15  Center [for SafeSport] had received, and what the Center had determined in its

16  investigation, which is hardly conduct that amounts to 'branding the Minor Child with the

17  stigma of sexual misconduct.'" Dkt. 26 at 18. SafeSport similarly asserts that it "never

18  accused Minor Child of anything" and that, "[w]hile Plaintiffs may disagree with how the

19  Center conducted its investigation, the Center was acting pursuant to its statutory duties."

20  Dkt. 35 at 25–26.

21      Doe again cites USA Swimming's email concerning the no contact directive and

22  argues that "the Center admits that it gratuitously and unnecessarily branded the Minor

1   Child with the false stigma of sexual misconduct, without any hearing, and without any

2   finding of sexual misconduct ever being made." Dkt. 42 at 30 (citing Dkt. 9 at 66–68).

3   Doe also asserts, without citation to specific factual allegations, that "the participants and

4   Defendants share responsibility for the years of unrelenting, despicable acts of the

5   respective agents, the Keoughs and the Bellins." Dkt. 42 at 30.

6          To prevail on an outrage claim, a plaintiff must show "(1) extreme and outrageous

7   conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to

8   plaintiff of emotional distress." *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792

9   (2014). To be outrageous, the conduct must be "[s]o outrageous in character, and so

10  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

11  atrocious, and utterly intolerable in a civilized community." *Reyes v. Yakima Health*

12  *Dist.*, 191 Wn.2d 79, 91 (2018) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975)).

13         The email concerning the no contact directive does not support an outrage claim.

14  This email simply conveyed SafeSport's decision to implement a no conduct directive

15  between Doe's child and the minor female athletes who accused him of sexual

16  harassment. SafeSport's no contact directive and USA Swimming's email forwarding this

17  directive to the local swimming committee and coach of the local swimming club were

18  both authorized by the Amateur Sports Act.[16] For this reason alone, SafeSport's no

19  contact directive and USA Swimming's email cannot support an outrage claim.

20

21         [16] Again, the Amateur Sports Act requires SafeSport to "develop . . . oversight practices,
    policies, and procedures to prevent abuse, including emotional, physical, and sexual abuse, of
    amateur athletes." 36 U.S.C. § 220541(a)(1)(C). It also requires SafeSport to "establish

22

1    In any event, the no contact directive did not "brand" Doe's child with "the stigma

2 of sexual misconduct." It instead accurately stated that Doe's child "allegedly engaged in

3 behaviors that constitute Sexual Misconduct." Dkt. 9 at 67. This statement is indisputably

4 accurate. And again, Doe's child admitted to "the misconduct alleged" when he signed

5 the "final and binding" resolution to the investigation. Dkt. 36-1 at 5.

6    To the extent Doe's outrage claim is based on "on the years of unrelenting,

7 despicable acts of the respective agents, the Keoughs and the Bellins," Dkt. 42 at 30,

8 Doe's briefing fails to identify the particular acts to which this assertion refers, which

9 member of these families performed the acts, and under what circumstances. The label

10 "despicable" is conclusory and vague, and insufficient to state a plausible claim.

11 Regardless, none of the allegations in the amended complaint concerning the Keoughs or

12 Bellins support an outrage claim.

13    USA Swimming's and SafeSport's motions to dismiss Doe's outrage claim against

14 them is **GRANTED**. Because this claim cannot be cured through further amendment, it is

15 **DISMISSED with prejudice**.

16

17

18

19 mechanisms that allow for the reporting, investigation, and resolution . . . of alleged sexual abuse

20 in violation of the Center's policies and procedures" and to "ensure that the[se] mechanisms . . .
protect the privacy and safety of complainants." 36 U.S.C. § 220541(a)(1)(D–(E). The no contact

21 directive was entirely consistent with these statutory directives. The Act additionally expressly
contemplates SafeSport's issuance of temporary no contact directives by requiring "each national

22 governing body . . . [to] enforce[] temporary measures and sanctions issued pursuant to the
authority of the Center [for SafeSport]." 36 U.S.C. § 220505(d)(1)(C).

# III.  ORDER

Therefore, it is hereby **ORDERED** that USA Swimming's and SafeSport's

motions to dismiss, Dkts. 26 and 35, are **GRANTED**. All of Doe's claims against these

defendants are **DISMISSED with prejudice**.

Dated this 23rd day of August, 2024.

_____

BENJAMIN H. SETTLE
United States District Judge